# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOEL MARTINEZ, (R14596), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 12 C 2012 |
| v. | ) | |
| | ) | |
| STEPHEN DUNCAN,[1] Warden, Lawrence | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

On March 16, 2012, Petitioner Joel Martinez filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). On May 31, 2012, the Court granted Respondent's motion to dismiss Martinez's habeas petition as untimely. *See* 28 U.S.C. § 2244(d)(1). On June 24, 2013, the United States Court of Appeals for the Seventh Circuit vacated the Court's May 31, 2012, judgment and remanded this matter for reconsideration in light of *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1928 (2013), which held claims of actual innocence, if proved, can excuse the expiration of the statute of limitations for federal habeas petitions.

On remand, the Court appointed counsel for Martinez and set a briefing schedule on the issue of whether the actual innocence exception applies under the circumstances. This issue is now fully briefed. For the following reasons, Martinez's habeas claims are untimely pursuant to

---

[1] Petitioner is incarcerated at Lawrence Correctional Center and is in the custody of Stephen Duncan, who is the Warden. Accordingly, the Court substitutes Duncan as the proper Respondent pursuant to Federal Rule of Civil Procedure 25(d) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. *See Rumsfeld v. Padilla,* 542 U.S. 426, 436, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004).

28 U.S.C. § 2244(d)(1). Moreover, even if Martinez's habeas claims were timely, the Court denies Martinez's habeas claims on the merits. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## PROCEDURAL BACKGROUND

On July 28, 2005, Martinez entered into a negotiated plea of guilty to one count of first degree murder in the Circuit Court of Cook County, Illinois. (R. 8, Habeas Rule 4 Exs., Ex. A.) That same day, the Circuit Court sentenced him to twenty-five years in prison. (*Id.*) On September 22, 2005, Martinez filed a pro se motion to withdraw his guilty plea. (Exs. M, N.) On December 13, 2005, Martinez withdrew his motion and did not directly appeal his conviction or sentence. (Exs. A, M.)

On March 12, 2008, Martinez filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*., alleging that: (1) his trial counsel was constitutionally ineffective; (2) he is actually innocent; (3) his sentence was void because the trial court did not properly admonish him of his mandatory supervised release ("MSR") term; and (4) his confession was involuntary. (Exs. A, N, O.) On May 9, 2008, the Circuit Court of Cook County dismissed Martinez's post-conviction petition as frivolous and without merit. (Exs. N, Q.)

Martinez appealed the Circuit Court's summary dismissal of his post-conviction petition to the Illinois Appellate Court, First District, arguing that: (1) he is actually innocent;[2] (2) his

---

[2] Unlike claims on federal collateral review, Illinois courts recognize actual innocence claims as free standing claims based on the Illinois Constitution. *Compare Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits"), *with People v. Washington,*

trial counsel was constitutionally ineffective; (3) the trial court improperly admonished him

regarding his MSR term; and (4) the post-conviction trial court failed to fully review his post-

conviction petition. (Exs. A-C.) On October 27, 2010, the Illinois Appellate Court affirmed the

trial court's dismissal of Martinez's post-conviction petition and on May 25, 2011, the Supreme

Court of Illinois denied Martinez's petition for leave to appeal ("PLA"). (Exs. E, F.)

On July 7, 2011, Martinez filed a pro se motion for leave to file a mandamus complaint in

the Circuit Court alleging that 730 ILCS 5/3-6-3—the statute under which the Circuit Court

sentenced him—violated the Illinois Constitution's single subject rule. (Exs. G, H.) On

September 20, 2011, the Circuit Court denied Martinez's motion. (Ex. H.) Thereafter, on

November 8, 2011, Martinez filed a pro se motion for leave to file a late notice of appeal that the

Circuit Court denied on November 18, 2011. (Exs. I, J.) On January 18, 2012, Martinez filed a

pro se motion for leave to file a late notice of appeal to the Illinois Appellate Court. (Ex. K.)

The Illinois Appellate Court denied Martinez's motion on January 26, 2012. (*Id*.)

The Court received Martinez's pro se petition for a writ of habeas corpus on March 20,

2012. Although Martinez did not date or attached a certificate of mailing to his habeas petition,

Martinez's initial docket entry states that the envelope containing Martinez's habeas petition was

postmarked March 16, 2012. (R. 1.) Construing his pro se habeas petition liberally, *see*

*Ambrose v. Roeckeman,* 749 F.3d 615, 618 (7th Cir. 2014), Martinez brings the following

---

171 Ill.2d 475, 489, 216 Ill.Dec. 773, 665 N.E.2d 1330 (Ill. 1996) ("We therefore hold as a
matter of Illinois constitutional jurisprudence that a claim of newly discovered evidence showing
a defendant to be actually innocent of the crime for which he was convicted is cognizable as a
matter of due process."). Indeed, the Supreme Court recently explained that it "has not resolved
whether a prisoner may be entitled to habeas relief based on a freestanding actual-innocence
claim." *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1926 (2013).

claims: (1) the Circuit Court's failure to grant a post-conviction evidentiary hearing violated his due process and equal protection rights; (2) the statute under which he was sentenced, namely, 730 ILCS 5/3-6-3, denied him due process and equal protection; and (3) 730 ILCS 5/3-6-3 violates the Illinois Constitution's single subject rule.

## LEGAL STANDARD

"AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus." *Wall v. Kholi,* ___ U.S. ___, 131 S.Ct. 1278, 1283, 179 L.Ed. 252 (2011) (citing 28 U.S.C. § 2244(d)(1)(A)); *see also Socha v. Boughton,* 763 F.3d 674, 682 (7th Cir. 2014); *Ray v. Clements,* 700 F.3d 993, 1003 (7th Cir. 2012). "This period runs 'from the latest of' four specified dates, including":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Wall,* 131 S.Ct. at 1283 (quoting 28 U.S.C. § 2244(d)(1)(A)-(D)); *Martin v. Bartow,* 628 F.3d 871, 873 (7th Cir. 2010).

# ANALYSIS

## I.       Timeliness Analysis

As a starting point, the Court turns to the date upon which Martinez's judgment became

final under 28 U.S.C. § 2244(d)(1).  *See Gonzalez v. Thaler*, ___ U.S. ___ 132 S.Ct. 641, 653-54,

181 L.Ed.2d 619 (2012) (conviction becomes final upon expiration of time for seeking direct

review).  Martinez's conviction became final on August 28, 2005, which was 30 days after the

Circuit Court of Cook County entered judgment on Martinez's guilty plea and sentenced him to

25 years in prison.  *See* Ill.S.Ct.R. 604(d).  In particular, under Illinois Supreme Court Rule

604(d):

> No appeal from a judgment entered upon a plea of guilty shall be taken unless the
> defendant, within 30 days of the date on which sentence is imposed, files in the
> trial court a motion to reconsider the sentence, if only the sentence is being
> challenged, or, if the plea is being challenged, a motion to withdraw the plea of
> guilty and vacate the judgment.  No appeal shall be taken upon a negotiated plea
> of guilty challenging the sentence as excessive unless the defendant, within 30
> days of the imposition of sentence, files a motion to withdraw the plea of guilty
> and vacate the judgment.

210 Ill.2d. R. 604(d).  In short, "Rule 604(d) establishes a condition precedent for an appeal from

a defendant's plea of guilty."  *People ex rel. Alvarez v. Skryd,* 241 Ill.2d 34, 40, 348 Ill.Dec. 384,

944 N.E.2d 337 (Ill. 2011) (citation omitted).

Accordingly, to perfect his appellate rights, Martinez had 30 days from the day the

Circuit Court of Cook County entered judgment on July 28, 2005, to file a motion to withdraw

his guilty plea.  *See People v. Albers,* 992 N.E.2d 600, 603, 372 Ill.Dec. 758, 761 (2d Dist. 2013)

("the failure to file the appropriate motion under Rule 604(d) results in dismissal of the appeal");

*People v. Green,* 375 Ill.App.3d 1049, 1053, 874 N.E.2d 935, 314 Ill.Dec. 570 (2d Dist. 2007)

("defendant's failure to follow Rule 604(d) by moving to withdraw his guilty plea and vacate the

judgment subjected him to the consequence actually specified by the rule—the loss of his right

to appeal the judgment.").  Because Martinez filed a late motion to withdraw his guilty plea on

September 22, 2005, the statute of limitations began to run on August 28, 2005.  Thus, absent

statutory or equitable tolling, Martinez was required to file his federal habeas petition on or

before August 28, 2006.  *See Newell v. Hanks,* 283 F.3d 827, 833 (7th Cir. 2002) (one-year

limitations period expires on anniversary of date conviction became final).  Martinez filed the

present habeas petition on March 16, 2012—over five years after the statute of limitations had

expired.

Although the limitations period is tolled during a properly filed application for state post-

conviction relief, *see* 28 U.S.C. § 2244(d)(2), Martinez did not file his post-conviction petition

pursuant to the Illinois Post-Conviction Hearing Act until March 12, 2008, which was well after

the August 28, 2006, deadline.  *See DeJesus v. Acevedo,* 567 F.3d 941, 943 (7th Cir. 2009) ("a

state proceeding that does not begin until the federal year has expired is irrelevant").  Similarly,

Martinez's mandamus action, filed on July 7, 2011, did not toll the limitations period.  *See id.*  In

fact, Martinez filed all of his collateral motions and applications after August 28, 2006, and thus

these motions do not toll the one-year limitations period.  *See Griffith v. Rednour,* 614 F.3d 328,

329 (7th Cir. 2010).

Hence, in the May 31, 2012, Memorandum, Opinion, and Order, the Court concluded that

neither statutory or equitable tolling applied under the circumstances, and therefore, Martinez's

habeas petition was untimely.  The Court, however, did not consider whether a claim of actual

innocence excused Martinez's untimely habeas petition because the Supreme Court had yet to

decide *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1928 (2013), which abrogated *Escamilla v.*

*Jungwirth,* 426 F.3d 868, 871 (7th Cir. 2005), holding actual innocence is unrelated to the statutory timeliness rules. The Court therefore turns to the parties' actual innocence arguments.

## II.      Actual Innocence

In 2013, the Supreme Court in *McQuiggin* held that actual innocence serves as a gateway through which a habeas petitioner may excuse the expiration of the statute of limitations under § 2244(d)(1). *See id.* at 1928. Actual innocence or "the fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins,* 506 U.S. 390, 404-05, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). As the Supreme Court teaches, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin,* 133 S.Ct. at 1928 (quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). In other words, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup,* 513 U.S. at 327. This new, reliable evidence may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (quoting *Schlup,* 513 U.S. at 324). "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v.*

*Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005).  When deciding the issue of actual innocence, "the habeas court must consider all the evidence, old and new, incriminating and exculpatory" to "make a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538.

The Court turns to the factual findings made by the last state court to decide Martinez's case on the merits, namely, the post-conviction Illinois Appellate Court's factual findings in *People v. Martinez,* 1-08-2341 (1st Dist. Oct. 27, 2010) (unpublished).[3]  The Court also considers the Circuit Court record in outlining the facts underlying Martinez's conviction.

The State charged Martinez and his co-defendants Jesus Castillo and Juan Cruz with first degree murder, among other offenses such as aggravated kidnaping, armed robbery, and aggravated vehicular hijacking, relating to the January 9, 2003, shooting death of Andy Bhairoo. On July 28, 2005, Martinez entered a guilty plea to one count of first degree murder, and, in exchange, the State dismissed the remaining counts against him.  The Circuit Court then sentenced Martinez to 25 years imprisonment after explaining to Martinez that the court could sentence him up to 60 years in prison.  Martinez acknowledged his sentencing exposure at that time.

Martinez stipulated to the following facts in support of his guilty plea.  If this case had proceeded to trial, the State would have presented the testimony of Ieoen Bhairoo, who would have testified that on January 9, 2003, he lived at 3453 North Kostner Avenue in Chicago with his 19-year-old brother Andy Bhairoo.  At about 3:00 a.m. that morning, Ieoen woke up to the

---

[3]  The Supreme Court has rejected the argument that a petitioner must show actual innocence under the clear and convincing evidence quantum of proof.  *See House v. Bell*, 547 U.S. 518, 539, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).

sound of breaking glass and saw three masked men enter his home.  Two of them were armed with guns and demanded money and drugs.  The men then taped the brothers to chairs and took them to the basement where the men beat the brothers.  Thereafter, the men cut Andy loose from his chair and took him with them in the Bhairoo's 1992 Ford Explorer.  Eventually, Ieoen saw a fourth masked man enter the house, after which this man put Ieoen in a closet.  After the men left the house, Ieoen freed himself and called the police.  At one point, one of the men removed his mask and Ieoen later identified him from a photo-array as Jesus Castillo.

Chicago Detective Mike Mancuso would have testified that he viewed Andy Bhairoo's body in an alley at 3224 North Central Avenue in Chicago at approximately 6:00 a.m. on January 9, 2003.  Detective Mancuso also would testify that Andy's hands were taped together. Dr. Robert Denton conducted a postmortem examination of Andy's body and would have testified that Andy died from multiple gunshot wounds.  Further, Dr. Denton would have opined to a reasonable degree of medical certainty that the manner of death was homicide.  In addition, Chicago Detective Mark Kowalski would have testified that he investigated the homicide and identified Martinez as a suspect, after which he took Martinez to the police station at Area 5 on January 17, 2003, for questioning.  The State then would have presented the testimony of Cook County Assistant State's Attorney Phyllis Porcelli, who would have testified that she interviewed Martinez on January 18, 2003, regarding Andy Bhairoo's death.  After Porcelli advised Martinez of his *Miranda* rights, he agreed to give a videotaped statement that same day.  Chicago Detective Peter Pertrono was present when Martinez waived his rights.

In his videotaped statement, Martinez stated that he was drinking with Juan Cruz when Jesus Castillo suggested they commit a robbery so they could get drugs and money.  After

agreeing to the robbery, Castillo left and returned with a mask and gun. The men then drove to 3453 North Kostner Avenue at about 3:00 a.m. on January 9, 2003. Martinez stated that Castillo then went up to the Bhairoo's house, broke a window, and gained access to the house. Martinez and Cruz followed. Once inside the Bhairoo's home, the men encountered Ieoen Bhairoo and taped him to a chair. Martinez stated that Andy Bhairoo then came out, after which they taped him to a chair as well. Cruz and Martinez searched the home for drugs and money. While searching, Martinez stated that Castillo hit the Bhairoo brothers with his gun and obtained keys to their truck. Castillo then left in the truck and Martinez and Cruz stayed at the house. Thereafter, Castillo and his uncle returned and the men took the Bhairoo brothers to the basement of the house. Also, Martinez and Castillo took Andy Bhairoo with them to search for more money and drugs at a different location. After they found money and drugs, Martinez and Castillo drove Andy Bhairoo to the area of 3200 North Central Park Avenue where Castillo shot Andy.

As discussed above, although Martinez did not file a direct appeal, approximately three years after his conviction, Martinez filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*., stating that: (1) his trial counsel was constitutionally ineffective; (2) he is actually innocent; (3) his sentence was void because the trial court did not properly admonished him of his mandatory supervised release ("MSR") term; and (4) his confession was involuntary. Martinez attached four affidavits to his post-conviction petition. First, he attached Jesus Castillo's October 29, 2007, affidavit in which Castillo averred under penalty of perjury, as follows:

> 1. I was a co-defendant in the case with Joel Martinez in 2003 and I was charged with Murder, Armed Robbery, Kidnaping, and Aggravated Battery.

2.  I was taken into custody on about January 14, 2003 and held for over 125-hours at Grand and Central Police Station where I was repeatedly and intensely questioned.

3.  I was tricked and forced into making a false statement implicating Martinez and Me.

4.  On 8.10.2006 I pled Guilty to Armed Robbery and received a 20-year sectence [sic] at 50%.

5.  After I arrived in the IDOC at Mt. Sterling Corr. Ctr. I learned that Joel Pled Guilty to the offense of First Degree Murder, I felt bad because I was there when the incident happened and I know for a fact Joel did not shoot anyone.

6.  I was the person with the gun on January 9th, 2003 and fired several shots, I was the one who drove Joel to the scene, and I know Joel had no idea of my intent to Rob the victim.

7.  I hardly knew Martinez and would see him here and there from the neighborhood; there was no plan or agreement to Rob or shoot anyone.

8.  If I were called to testify at any hearing or court proceeding I would freely and willingly do so, and give testimony about Joel's innocence.

(Ex. N, Common Law Record, 03 CR 0485, C: 0153-154.)

Next, Martinez attached his own February 29, 2008, affidavit to his post-conviction

petition, in which he averred:

1.  That I am the defendant-petitioner in this instant cause of action.

2.  That I so aver that, I advised trial counsel of the abuse I suffered at the hands of the Chicago Police Detectives of the Area (5) Station prior to my being compelled to enter a plea, and was told by trial counsel that nothing could be done, since I would not be believed by the trial court.

3.  That I wanted trial counsel to challenge the arrest and the statement which was being attributed to me, however, trial counsel failed to do so.

4.  That I further requested that my mother speak with the lawyer to tell him to challenge the arrest and the statement, but he told my Mother that nothing could be done due to me being a poor [H]ispanic, whose word would not be given much weight by the trial judge.

5.  That I was not aware that my co-defendant would provide me with a written affidavit

until, such time as he did in September 2007,[4] and in light of what was decided in Reyes and Solaches [sic], I then saw an [sic] legal and factual opportunity to finally make my case before the trial court, since I only plead guilty to avoid what would have been a life sentence according to trial counsel.

6.  That my mother and uncle's affidavits now act to support the factual basis of these claims.

7.  That I am indigent and without the financial means to defray the cost of these proceedings or to secure private counsel.

(Ex. N, Common Law Record, 03 CR 0485, C: 00127.)  Martinez also provided Maria

Acevedo's (his mother's) February 7, 2008, affidavit that stated:

1.  That I am a United States Citizen and presently reside in the City of Chicago, Illinois.

2.  That I am the biological Mother of the petitioner Joel Martinez, and have maintained constant communication with my Son from the time of his arrest to the signing of this affidavit.

3.  That I personally advised my son's lawyer in the trial court that my son had said he had been abused at the hands of the police when he was arrested and questioned at the Area (5) Police Station.

4.  That the lawyer told this affiant that nothing could be done, since my son was [H]ispanic and no judge would take his word.

5.  That I clearly told this lawyer that my son was only considering the plea of guilty because of what the lawyer told my son, which was, no judge would suppress the statement, and that my son would get natural life if he went to trial, which was the only reason my son entered his plea.

6.  That I am very discouraged that my son being [H]ispanic was a factor in seeing justice being done in the trial court.

7.  That I offer this affidavit now that it is known that Castillo did this case and not my

---

[4] Martinez's argument that he did not know the factual predicate of his actual innocence claim until he knew that Castillo would provide an affidavit of Martinez's actual innocence sometime in September 2007 does not save the day because the one-year limitations period had already run by August 28, 2006.  *See DeJesus v. Acevedo,* 567 F.3d 941, 943 (7th Cir. 2009); 28 U.S.C. § 2244(d)(1)(D).

son, and since evidence is now known by the courts that the arresting and questioning detectives of the Area (5) Police Station have an [sic] pattern of abusing the rights of those arrested and questioned, all of which has become known within the past year.

(Ex. O, Supp. Common Law Record 0012).

Martinez also provided the post-conviction Circuit Court with his uncle Miguel

Acevedo's affidavit, which stated:

1.  I am a United States Citizen and presently reside in the City of Chicago, Illinois.

2.  I am the Uncle of Joel Martinez and would frequently visit and communicate with my nephew during his stay at the Cook County Jail.

3.  I truly believe that Joel Martinez is innocent of the offense of murder.

4.  I recall that, right before Joel was to plead guilty, his lawyer told him that if Joel refused to enter an [sic] plea, Joel would face a life sentence.

5.  I know that Joel was under a lot of stress and was confused.

6.  That Joel told me personally that, though he was innocent, he feared receiving a life sentence for something that he did not do, but could not prove it at that time.

7.  That Joel was told by his lawyer that, the statement that the police forced him to make would be used against him, and no-one would believe they forced Joel to make it.

(Ex. O, Supp. Common Law Record 00123.)

After considering these affidavits on post-conviction appeal, the Illinois Appellate Court

reasoned:

After reviewing the affidavits, we agree with the trial court's judgment that [Martinez's] postconviction petition was without merit and properly dismissed as frivolous and without merit. We concur that Castillo's affidavit was newly discovered and would require remand for second stage proceedings to examine the claim of actual innocence - if the affidavit provided exonerating evidence. However, the affidavit does nothing of the sort. Rather, the affidavit actually corroborates [Martinez's] confession, which he claims was coerced [].

Castillo attests that he had the gun and fired shots, not [Martinez]. However, Castillo also places [Martinez] at the scene. This scenario presented by Castillo is

exactly as [Martinez] confessed and his guilt under an accountability theory would stand. Therefore, his claim of actual innocence must fail. While newly discovered, ... the affidavit does not provide any arguable basis in fact or law to support [Martinez's] actual innocence claim or remand for further proceedings. The trial court's judgment dismissing [Martinez's] actual innocence claim was sound and remand is unnecessary based on the record in this case.

*People v. Martinez,* 1-08-2341, at *9 (1st Dist. Oct. 27, 2010) (unpublished).

Under Illinois' accountability statute, 720 ILCS 5/5-2(c), an individual is legally accountable for the conduct of another when, "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." *People v. Fleming,* 14 N.E.3d 509, 519 (1st Dist. 2014) (quoting 720 ILCS 5/5-2(c)). As such, although Martinez did not shoot Andy Bhairoo, Castillo's affidavit places Martinez at the scene of the crimes, both the robbery and the shooting, and corroborates the other evidence in the record, such as Ieoen Bhairoo's eyewitness testimony, in support of the State's accountability theory.

Considering the total record, including the four new affidavits along with the old evidence upon which Martinez's guilty plea was based, the Court cannot conclude that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House,* 547 U.S. at 537; *see also Schlup,* 513 U.S. at 327. Simply put, the new evidence fails to outweigh the other evidence pointing to Martinez's guilt. *See Morales*, 659 F.3d at 606. As mentioned, Ieoen Bhairoo's testimony included that on the day of the robbery and the murder, January 9, 2003, he lived at 3453 North Kostner Avenue in Chicago with the shooting victim, his 19-year-old brother Andy Bhairoo. On that day, Ieoen woke up to the sound of breaking glass and saw three masked men enter his home. Two of them were armed

with guns and demanded money and drugs. The men then taped the brothers to chairs and took them to the basement where the men beat the brothers. Thereafter, the men cut Andy Bhairoo loose and took him with them in the Bhairoo's 1992 Ford Explorer. At some point, Ieoen saw a fourth masked man enter the house, after which this man put Ieoen in a closet. After the men left the house, Ieoen freed himself and called the police. During the robbery, one of the men removed his mask and Ieoen later identified him as Jesus Castillo. Moreover, Castillo's affidavit places Martinez at the scene of the robbery and the shooting.

Although it might be a reasonable inference to conclude Maria Acevedo's averment that Castillo "did this case" and Miguel Acevedo's statement that Martinez is innocence of murder support Martinez's actual innocence claim, another reasonable inference is that Maria, Martinez, and the other affiants did not understand that Martinez could be found guilty under Illinois' accountability statute. Also, courts have often recognized that any such "11th hour affidavits produced with no reasonable explanation [after] a long delay are suspect." *Morales v. Johnson,* 659 F.3d 588, 606 (7th Cir. 2011) (citation, internal quotation marks omitted). In addition to the late timing of the affidavits, the fact that Miguel and Maria Acevedo are Martinez's family members further diminishes their credibility. *See Schlup,* 513 U.S. at 332; *Coleman v. Lemke,* 739 F.3d 342, 352 (7th Cir. 2014).

Other new evidence includes Martinez's averments of police abuse prior to giving his videotaped statement. In determining Martinez's argument that the police coerced his confession—within the context of his ineffective assistance of counsel claim that counsel failed to suppress his statement—the post-conviction Illinois Appellate Court concluded:

> [D]efendant has only presented broad assertions that he was mistreated and that counsel failed to investigate and move to suppress his statement. The record

15

> indicates that defendant was picked up by Officer Kowalski on January 17, 2003, and waived his rights and confessed in a videotaped interview by the assistance State's Attorney on January 28, 2003. There are no specific allegations, no evidence that defendant suffered mental or physical trauma, and no witnesses to any abuse. Further, defendant stated that he was not mistreated and entered his plea under his own free will.

*People v. Martinez,* 1-08-2341, at *12 (1st Dist. Oct. 27, 2010) (unpublished).

Indeed, not only are Martinez's assertions—along with his mother's and uncle's averments—overly broad and general, they are also speculative. Specifically, Martinez bases his claim on facts set forth in *People v. Reyes*, 369 Ill.App.3d 1, 860 N.E.2d 488, 307 Ill.Dec. 834 (1st Dist. 2006), concerning Area 5 police misconduct without explaining how these facts are relevant to his coerced confession claim. In *Reyes*, the defendants Arturo Reyes and Gabriel Solache alleged in their post-conviction petitions that their confessions resulted from physical coercion by Chicago Police Detective Reynaldo Guevara. *See id*. at 2-3. Based on "sufficiently relevant" evidence provided by defendants supporting their coercion allegations, the Illinois Appellate Court reversed the Circuit Court's summary dismissal of Reyes' and Solache's post-conviction petitions and remanded the case for an evidentiary hearing. *See id.* at 23-24. Here, Martinez has not explained how Chicago Detective Guevara's actions against Reyes and Solache relate to his case in which different Chicago police officers were involved in his investigation and his resultant statement.[5] Other evidence in the record also contradicts Martinez's allegations that certain unnamed police officers coerced his statement, including that at his change of plea hearing, Martinez did not mention any police misconduct and stated that he was pleading guilty

---

[5] The Illinois Appellate Court, First District, has concluded that Detective Guevara has engaged in a pattern of systematic misconduct, including coercing false statements. *See People v. Montanez,* No. 1-11-0044, 2013 WL 1189377, at *5 (1st Dist. Mar. 22, 2013) (unpublished); *People v. Almodovar,* 984 N.E.2d 100, 112, 368 Ill.Dec. 375, 387 (1st Dist. 2013).

of his own free will.

Nonetheless, even without considering his videotaped statement, based on the new and old evidence, the Court cannot conclude that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," especially in light of Ieoen Bhairoo's eyewitness testimony and Castillo's affidavit corroborating Martinez's presence at the shooting and robbery. *See House,* 547 U.S. at 537. Therefore, Martinez has failed to establish actual innocence under controlling Supreme Court precedent.

Assuming, arguendo, that Martinez's habeas claims are timely, the Court now turns to the merits of his habeas claims. *See, e.g., Morales,* 659 F.3d at 606.

## III.    Martinez's Habeas Claims

Martinez is entitled to federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). As the Seventh Circuit instructs, "[t]he remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004). The Seventh Circuit, however, has recognized that a habeas petitioner's due process claims based on state court errors may be cognizable on habeas review because due process entitles a defendant to a fair trial, "but only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process." *Id*. at 510; *see also Richardson v. Lemke,* 745 F.3d 258, 275 (7th Cir. 2014).

**A.     Due Process and Equal Protection—Post-Conviction Evidentiary Hearing**

In his first habeas claim, Martinez maintains that the Circuit Court of Cook County deprived him of his due process and equal protection rights by failing to conduct a post-conviction evidentiary hearing.  To clarify, there are three stages under Illinois' Post-Conviction Hearing Act for adjudicating post-conviction petitions.  *See People v. Hommerson,* 4 N.E.3d 58, 60, 378 Ill.Dec. 459, 461 (Ill. 2014).  At the first stage, the Circuit Court considers whether a petitioner's allegations set forth a constitutional claim for relief—if not, the Circuit Court will summarily dismiss the petition.  *See id.*; *see also* 725 ILCS 122-2.1(a).  If the Circuit Court does not summarily dismiss the petition, at the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation.  *See People v. Domagala*, 987 N.E.2d 767, 775, 370 Ill.Dec. 1, 9 (Ill. 2013).  Only then will the petition advance to the third stage, which consists of an evidentiary hearing.  *See Hommerson,* 4 N.E.3d at 60; *see also* 725 ILCS 5/122-6.

Turning to Martinez's argument that the Circuit Court violated his constitutional rights by denying him a post-conviction evidentiary hearing, it is well-established that there is no constitutional right to state collateral review of a criminal conviction.  *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide [collateral] relief."); *Montgomery v. Meloy.* 90 F.3d 1200, 1206 (7th Cir. 1996) ("No constitutional provision or federal law entitles [defendant] to any state collateral review.").  Therefore, any allegation "that the State may have failed to comply with its post-conviction procedures would not raise a cognizable federal habeas claim."  *Resendez v. Smith*, 692 F.3d 623, 628 (7th Cir. 2012).  In short, the Circuit Court's decision to deny a post-conviction evidentiary hearing is a matter of state law, therefore, Martinez's first habeas claim is untenable.  *See Wilson v. Corcoran,* 562

U.S. 1, 131 S.Ct. 13, 16, 178 L.Ed.2d 276 (2010) ("it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").

**B.      Due Process and Equal Protection—Good Conduct Credit**

Next, Martinez contends that the Circuit Court denied him due process and equal protection by sentencing him pursuant to 730 ILCS 5/3-6-3(a)(2)(i), which requires an offender convicted of first degree murder to serve 100% of his sentence, thus prohibiting the defendant from earning good conduct credit during his or her incarceration. "[T]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Instead, Illinois has created a statutory right to good conduct credit for prison inmates. *See Eichwedel v. Chandler,* 696 F.3d 660, 675 (7th Cir. 2012). Because Martinez's claim is not based on the Constitution, but instead, an Illinois statute, his claim is not cognizable on habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, Martinez's second habeas claim is without merit.

**C.      Illinois Constitution's Single Subject Rule**

Martinez's last habeas claims assert that Illinois' good conduct credit statute, namely, 730 ILCS 5/3-6-3, violates the Illinois Constitution's single subject rule, which regulates the process by which legislation is enacted in Illinois. *See People v. Cervantes*, 189 Ill.2d 80, 83, 723 N.E.2d 265, 266, 243 Ill.Dec. 233, 234 (Ill. 1999). More specifically, under Article IV, § 8(d) of the Illinois Constitution, a legislative act must be confined to one subject. *See Cervantes,* 189 Ill.2d at 84. Whether a particular Illinois statute violates the Illinois Constitution is a matter of state law for the Illinois courts to decide— not this Court on collateral review. *See Garry v.*

*McCann,* No. 06 C 1692, 2007 WL 505762, at *7 (N.D. Ill. Feb. 13, 2007); *see, e.g., People v. Reedy,* 186 Ill.2d 1, 17-18, 237 Ill.Dec. 74, 708 N.E.2d 1114, 1121-22 (Ill. 1999). Put differently, Martinez's last claim is not cognizable on habeas review because it does not present a federal constitutional issue. *See Perruquet,* 390 F.3d at 511 ("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim presents no federal issue at all.") (quotation omitted). Therefore, the Court denies Martinez's last habeas claims.

## IV.     Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Martinez a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order. *See Gonzalez*, 132 S.Ct. at 649 n.5.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Specifically, under 28 U.S.C. § 2253(c)(2), a habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 336; *Thomas v. Zatecky,* 712 F.3d 1004, 1006 (7th Cir. 2013). Under this standard, Martinez must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting

*Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

As the Seventh Circuit has held "[w]hether a given petition is timely is a question under § 2244, not under the Constitution, and therefore an error in treating a collateral attack as untimely is not enough to support a certificate of appealability." *Owens v. Boyd,* 235 F.3d 356, 358 (7th Cir. 2000) (collecting cases); *see also West v. Schneiter,* 485 F.3d 393, 395 (7th Cir. 2007) ("questions of statutory interpretation, such as whether the petition was timely, do not qualify for a certificate, because they do not concern the Constitution"). Further, assuming, arguendo, that Martinez's habeas claims were timely, his habeas claims did not involve federal constitutional issues, and thus are not cognizable on habeas review. As such, Martinez has failed to make a substantial showing that he was denied a constitutional right, required for a certificate of appealability. *See Perruquet,* 390 F.3d at 512. The Court therefore declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Petitioner's habeas petition as untimely and on the merits. *See* 28 U.S.C. §§ 2244(d)(1), 2254(d). The Court further declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** December 4, 2014

ENTERED

**AMY J. ST EVE**
**United States District Court Judge**